# 14-3648-cv

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

►►◄◄

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COLONIAL BANK,

*Plaintiff-Appellant,*

*v.*

FIRST HORIZON ASSET SECURITIES, INC., FIRST HORIZON HOME LOAN CORPORATION, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., FTN FINANCIAL SECURITIES CORP., HSBC SECURITIES (USA) INC., RBS SECURITIES INC., UBS SECURITIES LLC, WELLS FARGO ASSET SECURITIES CORPORATION,

*Defendants-Appellees,*

*and*

CHASE MORTGAGE FINANCE CORP., JP MORGAN CHASE & CO., JP MORGAN SECURITIES LLC, CITICORP MORTGAGE SECURITIES, INC., CITIMORTGAGE, INC., CITIGROUP GLOBAL MARKETS INC., ALLY SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,

*Defendants.*

—————————

*On Appeal from the United States District Court*
*for the Southern District of New York (New York City)*

## BRIEF OF *AMICI* FEDERAL HOUSING FINANCE AGENCY AND NATIONAL CREDIT UNION ADMINISTRATION BOARD IN SUPPORT OF PLAINTIFF-APPELLANT FEDERAL DEPOSIT INSURANCE COMPANY

David C. Frederick
Wan J. Kim
Gregory G. Rapawy
KELLOGG, HUBER, HANSEN, TODD, EVANS
    & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
202-326-7900

*Counsel for Amicus*
   *National Credit Union Administration Board*

Kathleen M. Sullivan
Philippe Z. Selendy
Adam M. Abensohn
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000

*Counsel for Amicus*
   *Federal Housing Finance Agency*

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF INTEREST ...................................................................1

SUMMARY OF ARGUMENT .................................................................4

ARGUMENT ...........................................................................................9

I.    Section 1821 Is A Comprehensive Provision That Replaces All Prior
      Time Bars, Including Periods Of Repose .......................................9

      A.    This Court Performed The Proper Analysis In *UBS*, And Its
            Holding Remains Correct ....................................................10

      B.    The Extender Statute Is Different From CERCLA, Which
            Leaves Existing Limitations Frameworks In Place ............13

II.   The District Court Failed To Address The Fundamental Differences
      Between FIRREA And CERCLA ..................................................16

III.  The District Court Decision Contradicts FIRREA's Legislative
      History And Purpose .....................................................................21

IV.   The District Court Failed To Recognize That The FDIC, As An
      Agency Of The Federal Government, Is Entitled To A Presumption
      That Its Claims Are Timely ..........................................................26

CONCLUSION .....................................................................................28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*BP Am. Prod. Co. v. Burton*,
549 U.S. 84 (2006).................................................................9, 26

*CTS Corp. v. Waldburger*,
134 S. Ct. 2175 (2014)................................................*passim*

*Corley v. United States*,
556 U.S. 303 (2009).................................................................23

*FDIC v. Barton*,
96 F.3d 128 (5th Cir. 1996) .................................................25

*FDIC v. Former Officers & Dirs. of Metro. Bank*,
884 F.2d 1304 (9th Cir. 1989) ...........................................27

*FDIC v. Rhodes*,
336 P.3d 961 (Nev. 2014)..........................................*passim*

*FHFA v. HSBC N. Am. Holdings Inc.*,
2014 WL 4276420 (S.D.N.Y. Aug. 28, 2014)........................5, 14, 19

*FHFA v. Royal Bank of Scotland Grp. PLC*,
2012 WL 3580522 (D. Conn. Aug. 17, 2012) ...................27

*FHFA v. UBS Americas Inc.*,
712 F.3d 136 (2d Cir. 2013) ......................................*passim*

*Guinn v. F.D.I.C.*,
2015 WL 139386 (D. Nev. Jan. 12, 2015) ...................5, 14

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
131 S. Ct. 1325 (2011).........................................................23

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
No. 13CV6705 DLC, 2014 WL 5017822 (S.D.N.Y. Sept. 30, 2014)...............16

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
727 F.3d 1246 (10th Cir. 2013) ...............................*passim*

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
764 F.3d 1199 (10th Cir. 2014) ...............................*passim*

*Resolution Trust Corp. v. Elman*,
949 F.2d 624 (2d Cir. 1991) ...............................................27

*SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*,
167 F.3d 235 (5th Cir. 1999) ...............................................23

*United States v. Polouizzi,*
   564 F.3d 142 (2d Cir. 2009) ...................................................10

*United States v. Winstar Corp.,*
   518 U.S. 839 (1996)...........................................................22

## Statutes and Regulations

12 U.S.C. § 1752a(a) ..............................................................1

12 U.S.C. § 1754 ...................................................................1

12 U.S.C. § 1766 ...................................................................1

12 U.S.C. § 1781 ...................................................................1

12 U.S.C. § 1782(c) ...............................................................1

12 U.S.C. § 1783 ...................................................................1

12 U.S.C. § 1784 ...................................................................1

12 U.S.C. § 1786(h) ...............................................................1

12 U.S.C. § 1787 ...................................................................1

12 U.S.C. § 1787(b)(14) ..........................................................2

12 U.S.C. § 1821 ............................................................*passim*

12 U.S.C. § 1821(d)(14) .....................................................*passim*

12 U.S.C. § 1821(d)(14)(A) ......................................................8

12 U.S.C. § 1821(d)(14)(A)(i)(I) .............................................15, 20

12 U.S.C. § 1821(d)(14)(A)(i)(II) ............................................15, 20

12 U.S.C. § 1821(d)(14)(B)(ii) .................................................20

12 U.S.C. § 1821(d)(2)(B) .......................................................11

12 U.S.C. § 1821(d)(2)(B)(ii) ..................................................23

12 U.S.C. § 1821(d)(2)(D) .......................................................11

12 U.S.C. § 4501(2) ...............................................................1

12 U.S.C. § 4511(a) ...............................................................1

12 U.S.C. § 4617(a)(1) ............................................................1

12 U.S.C. § 4617(a)(2) ............................................................1

12 U.S.C. § 4617(a)(3) ................................................................1

12 U.S.C. § 4617(b)(12) ......................................................2, 9, 11

12 U.S.C. § 4617(b)(2)(B)(ii) ...............................................1, 19

12 U.S.C. § 4617(b)(2)(B)(iv) ....................................................1

12 U.S.C. § 4617(b)(2)(D)(i) .......................................................1

15 U.S.C. § 77m ..........................................................18, 22, 24

28 U.S.C. § 1658(b) ...................................................................18

42 U.S.C. § 9658 ..................................................................*passim*

42 U.S.C. § 9658(a)(1) .........................................................7, 14

42 U.S.C. § 9658(a)(2) .......................................................14, 15

42 U.S.C. § 9658(b)(4) ................................................................7

Allocation of Regulations and Orders Pursuant to FIRREA,
    54 F.R. 41359-02 ..................................................................22

Comprehensive Environmental Response, Compensation, and Liability Act of
    1980, Pub. L. No. 96-510, 94 Stat. 2767 ....................................*passim*

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 ...........................................*passim*

Housing and Economic Recovery Act of 2008,
    Pub. L. No. 110-289, 122 Stat. 2654, § 1367 .............................*passim*

Sarbanes-Oxley Act of 2002, § 804, Pub. L. No. 107-204, 116 Stat. 745, 801 ......18

## Other Authorities

Brief and Special Appendix for Defendants-Appellants, *FHFA v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. Sept. 19, 2012), No. 12-3207-cv, Dkt. 59,
    2012 WL 4509864 ..................................................................15

Brief for the United States as Amicus Curiae in Support of Appellee, *FHFA v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. Nov. 1, 2012), No. 12-3207-cv, Dkt. 172,
    2012 WL 5464203 ..................................................................16

*Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*,
    134 S. Ct. 2818 (2014)............................................................12

*Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*,
    No. 14-379, 2015 WL 132974 (U.S. Jan. 12, 2015)...................3, 12

## STATEMENT OF INTEREST

*Amicus* Federal Housing Finance Agency ("FHFA") serves as the conservator for two Government-Sponsored Entities, the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"; together with Fannie Mae, the "GSEs"). The Housing and Economic Recovery Act of 2008 ("HERA") created FHFA as an independent agency of the federal government, 12 U.S.C. §4511(a), and vested its Director with the power to place the GSEs into conservatorship should circumstances warrant, id. §4617(a)(1)-(3). FHFA was appointed conservator on September 6, 2008, with responsibility to restore the GSEs to financial health, including by "collect[ing] all obligations and money due the regulated entit[ies]." See id. §4617(b)(2)(B)(ii), (iv), (D)(i). Congress vested FHFA with this responsibility because of the GSEs' "importan[ce] to providing housing in the United States and the health of the Nation's economy." 12 U.S.C. § 4501(2).

*Amicus* National Credit Union Administration Board ("NCUA") is an independent federal agency responsible for chartering and regulating federal credit unions, regulating federally insured state credit unions, and administering the National Credit Union Share Insurance Fund (the "Fund"). *See* 12 U.S.C. §§ 1752a(a), 1754, 1781, 1783-1784. The Fund protects the deposits of nearly 92 million account holders. It is financed through deposits by insured credit

unions and backed by the full faith and credit of the United States. *See id.*; *id.* §1782(c). When an insured credit union is in danger of failing, NCUA has the responsibility to step in as conservator—and, if necessary, liquidating agent—to minimize losses to the Fund. *See id.* §§ 1766, 1786(h), 1787.

NCUA and FHFA, like the FDIC, are authorized to bring claims in their capacities as conservators, receivers, or liquidating agents within the timeframe established in special "extender" statutes, which were designed to provide federal regulators with sufficient time to investigate and bring claims after taking over distressed entities. *See id.* § 1787(b)(14) (NCUA); *id.* §1821(d)(14) (FDIC); *id.* §4617(b)(12) (FHFA).[1] Pursuant to this authority, the FDIC, FHFA, and NCUA have each brought multiple actions seeking substantial damages for misrepresentations by defendant financial institutions in the sale of residential mortgage backed securities ("RMBS"). FHFA filed 18 actions in July and September 2011, asserting claims under the Federal Securities Act of 1933 (the "Securities Act"), and certain State Blue Sky provisions, against several major banks.[2] NCUA has asserted similar claims, seeking damages for

---

[1] Congress enacted extender statutes for the FDIC and NCUA in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"); and for FHFA in HERA in 2008. *See* FIRREA, 103 Stat. 183, § 212 (FDIC); FIRREA § 1217 (NCUA); HERA, 122 Stat. 2654, § 1367 (FHFA).

[2] FHFA has secured favorable resolutions in 16 of those actions. The two still pending in this jurisdiction are *FHFA v. Nomura Holding Am., Inc.*, 11 Civ.

2

misrepresentations by bank defendants in the sale of several billion dollars in RMBS certificates, in actions currently pending in this jurisdiction, and in the Ninth and Tenth Circuits.[3]

This Court and others have held that actions by FHFA and NCUA are timely pursuant to extender statutes materially identical to the extender statute at issue in this appeal. *See, e.g., FHFA v. UBS Americas Inc.* ("*UBS*"), 712 F.3d 136, 141 (2d Cir. 2013); *NCUA v. Nomura Home Equity Loan, Inc.* ("*Nomura II*"), 764 F.3d 1199, 1215, 1226, 1233 (10th Cir. 2014), *cert. denied* No. 14-379, 2015 WL 132974 (U.S. Jan. 12, 2015). In its decision in *UBS*, this Court rejected the argument, which the district court accepted here, that actions filed within the time periods set forth in an agency extender statute are nevertheless subject to periods of repose in earlier federal or state statutes. If this Court were to adopt the district

---

6201 (DLC) (S.D.N.Y.), which concerns approximately $2 billion of RMBS purchased by the GSEs, and *FHFA v. Royal Bank of Scotland Grp. plc*, No. 11 Civ. 01383 (AWT) (D. Conn.), which concerns over $32 billion of RMBS. In both actions, FHFA is asserting Securities Act claims similar to those at issue on this appeal.

[3]  NCUA has seven actions pending in the Southern District of New York, including *NCUA v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC). Collectively, those actions involve approximately $1.7 billion of RMBS purchased by Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union, for which NCUA serves as liquidating agent. NCUA also has eight similar actions pending in the Central District of California and the District of Kansas, collectively involving an additional $6.5 billion of RMBS purchased by other credit unions. NCUA's actions involve Securities Act claims and parallel claims under the securities laws of several states.

court's holding, and depart from its ruling in *UBS*, it would potentially render substantial claims that FHFA and NCUA have pending in this jurisdiction untimely. That result would upset Congress's purpose to ensure that both *amicus* agencies are afforded adequate time, upon taking over a distressed financial institution, to take the steps necessary to stabilize that institution and investigate and pursue available claims. Both agencies therefore have a strong interest in this Court's construction of the FDIC's statute, and the Court's continued adherence to its decision in *UBS*.

## SUMMARY OF ARGUMENT

As the FDIC persuasively argues, the district court erred by failing to apply this Court's decision in *UBS* and by thus dismissing the FDIC's claims. FHFA and NCUA present this joint *amicus* to support the FDIC's position, to expand on FHFA's previous showing to this Court that agency extender statutes preclude periods of repose, and to offer their perspective on the policies now at stake.

In its decision in *UBS*, this Court analyzed the HERA extender statute, which is materially identical to the FIRREA provision at issue here, 12 U.S.C. § 1821 ("Section 1821"), and held that it sets comprehensive time limits that replace all prior time bars, including periods of repose. 712 F.3d at 143-44. *UBS* remains the binding law of this Circuit, and is dispositive of this appeal. Brief of Appellant FDIC ("FDIC Br.") 15-17. The district court therefore erred when,

despite recognizing that *UBS* "seemed to resolve the statute of repose dispute in the FDIC's favor," JA 168, it enforced the three-year Securities Act repose period this Court deemed inapplicable in *UBS*.

The Supreme Court's decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which the district court relied on as its sole authority for rejecting this Court's holding in *UBS*, does not support that result. *CTS* construed Section 9658 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"),[4] which adjusts the commencement date for state statutes of limitations applicable to private plaintiffs bringing environmental tort actions. *UBS*, by contrast, construed the HERA extender statute, which has a fundamentally different structure and purpose. Because of the fundamental differences between agency extender statutes and Section 9658, both appellate courts to consider the issue, as well as Judge Cote in this Circuit, have held that *CTS* does not call into question the conclusion that the extender statutes replace all preexisting time periods. *See Nomura II*, 764 F.3d at 1199; *FDIC v. Rhodes*, 336 P.3d 961 (Nev. 2014); *FHFA v. HSBC N. Am. Holdings Inc.*, 2014 WL 4276420, at *1 (S.D.N.Y. Aug. 28, 2014) (Cote, J.); *see also Guinn v. FDIC*, 2015 WL 139386, at *1 (D. Nev. Jan. 12, 2015). The district court addressed none of that authority,

---

[4] Pub. L. No. 96-510, 94 Stat. 2767 (Dec. 11, 1980), as amended through Pub. L. No. 99-499 (Oct. 17, 1986).

and failed to consider the distinctions between Section 1821 and CERCLA Section 9658 that multiple courts have found critical.

**I.A.**    For reasons this Court has already recognized, and other courts continue to recognize after the ruling in *CTS*, it is clear from the language and structure of Section 1821 that Congress intended to create an exclusive timeliness provision that replaces all otherwise applicable time bars of any type.  Like the other agency extender statutes, Section 1821 applies "*in general*," and provides that "*the applicable* statute of limitations" for "*any action* brought by [the FDIC as receiver or conservator] *shall be*" a minimum of three years from the time of receivership.  The most "natural reading" of this language is that it creates a "comprehensive" framework governing the time in which an agency plaintiff is authorized to bring suit.  712 F.3d at 143 (quoting *FHFA v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 316-17 (S.D.N.Y. 2012)).  By establishing such a framework, Section 1821 "displaces all preexisting limits on the time to bring suit, whatever they are called." *Nomura II*, 764 F.3d at 1208.

**B**.  In reaching a different conclusion, the district court treated FIRREA as if it were equivalent to CERCLA, when in fact the two statutes are "fundamentally different." *Id.* at 1210 n.10.  Section 9658 of CERCLA implements a narrow "exception" to state law, which otherwise continues to govern the time for private plaintiffs to bring suit, by adjusting the commencement date for state "statute[s] of

limitations," 42 U.S.C. § 9658(a)(1) & (b)(4). Because Section 9658 refers back to still-applicable state time bars, it was necessary in *CTS* to analyze which particular type of state provision Congress was modifying through its use of the term "statute of limitations." As the Supreme Court reasoned, "under this structure, state law is not pre-empted unless it fits into the precise terms of the exception." *CTS*, 134 S. Ct. at 2185. Section 1821(d)(14) is not similarly limited in scope, and therefore is not subject to the same narrow construction.

**II**. The district court's failure to recognize the fundamental differences between CERCLA and FIRREA led it to the erroneous view that isolated terms from each statute should be applied in the same way. The Supreme Court in *CTS* made clear, however, that it was not holding that the term "statute of limitations" always excludes statutes of repose, but was adopting that narrow construction specifically in the CERCLA context. The Court emphasized repeatedly that use of that term by itself cannot be dispositive, since "statute of limitations" is often used broadly, including by Congress, to replace or encompass periods of repose. Thus, as this Court already recognized in *UBS*, "statute of limitations" must be understood based on the surrounding language, structure and purpose of the statute in which it appears. As discussed *supra*, that term appears in FIRREA, not as part of a narrow exception to state law, but as part of a comprehensive "general" provision setting "the applicable" period for "any action" by the FDIC. 12 U.S.C.

7

§ 1821(d)(14)(A).  FIRREA also includes other usages of "statute of limitations" that encompass concepts of repose, further demonstrating that Congress did not intend the narrow usage the district court adopted.

**III**.  The district court also failed to take account of the different legislative history and purposes underlying CERCLA and FIRREA.  The Supreme Court in *CTS* emphasized that Congress enacted CERCLA based on its review of a report that it had commissioned, which differentiated "limitations" from "repose."  134 S. Ct. at 2186.  The Court reasoned that Congress therefore made a knowing distinction when it adopted one of these terms in CERCLA, but not the other.  *Id.* Nothing "remotely similar" appears in the history preceding the passage of FIRREA.  *Nomura II*, 764 F.3d at 1215-16.  There is therefore no reason to suppose that Congress departed from its ordinary practice—a practice evident in legislation it passed before CERCLA and has passed since—of using the term "statute of limitations" to encompass periods of repose.  There is ample reason to conclude, however, that Congress intended the extender statute to apply broadly as a means of advancing its stated goal of providing the FDIC, like other agencies subject to extender statutes, with adequate time to investigate and assert the claims it is charged with pursuing.

**IV**.  The district court also failed to address that the FDIC, unlike the private plaintiff in *CTS*, is an arm of the federal government carrying out its statutory

duties, and therefore entitled to a presumption that its claims are timely. *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 96 (2006) ("[W]hen the sovereign elects to subject itself to a statute of limitations, the sovereign is given the benefit of the doubt if the scope of the statute is ambiguous"). Thus, even if the scope of Section 1821 were unclear, and it is not, it would still properly be interpreted in the FDIC's favor.

## ARGUMENT

## I. SECTION 1821 IS A COMPREHENSIVE PROVISION THAT REPLACES ALL PRIOR TIME BARS, INCLUDING PERIODS OF REPOSE

This Court held in *UBS* that Section 4617(b)(12) of HERA "supplants any other time limits that otherwise might have applied," including periods of repose. 712 F.3d at 143-44. The Court also observed that the HERA extender statute is materially identical to the FDIC statute at issue on this appeal, *compare* 12 U.S.C. § 4617(b)(12) *with id.* § 1821(d)(14); *see UBS*, 712 F.3d at 142 n.2 ("Congress drew the language of § 4617(d)(12) from similar provisions in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ('FIRREA'), 12 U.S.C. § 1821(d)(14)"). The district court recognized that this Court's holding in *UBS* resolves the "repose dispute in the FDIC's favor," but nevertheless rejected that holding and dismissed the FDIC's claims as untimely. JA 168. The district

9

court did not have the discretion to depart from this Court's binding authority. *See, e.g.*, *United States v. Polouizzi*, 564 F.3d 142, 160-61 (2d Cir. 2009) (reversing decision where "[t]he district court's conclusion … [was] less an application of existing precedent than a prediction of what the Supreme Court will hold when it chooses to address this issue in the future.") (quotation marks omitted). As the FDIC persuasively demonstrates, FDIC Br. 15-17, this Court's holding in *UBS* remains correct, and is unaffected by the Supreme Court's consideration of a dissimilar statute, in a different context, in *CTS*.

**A.  This Court Performed The Proper Analysis In UBS, And Its Holding Remains Correct**

This Court in *UBS* examined the text, structure and purpose of the HERA extender statute, and concluded that Congress had enacted "*comprehensive* time limitations for *any action* that the Agency might bring as conservator, including claims to which a statute of repose generally attaches[,]" 712 F.3d at 143 (emphasis in original) (quoting *UBS I*, 858 F. Supp. 2d at 316–17) (further quotations omitted). There is nothing in *CTS* that calls for any different analysis or result. To the contrary, *CTS* made clear that its holding was specific to CERCLA, and that the import of the term "statute of limitations" can only be understood based on the "text and structure," and the "context," of the particular statute in which it appears. *CTS*, 134 S. Ct. at 2185, 2187; *see also Nomura II*, 764 F.3d at

1210 ("[T]he Supreme Court looked to factors specific to CERCLA to conclude § 9658 preempted only state statutes of limitations and not statutes of repose").

In *UBS*, this Court performed just such a statute-specific analysis.. The Court declined to view the term "statute of limitations" "in isolation," and instead, consistent with *CTS*, analyzed the statutory text "as a whole." 712 F.3d at 141. In performing that analysis, the Court emphasized that the HERA extender statute, using the same broad terms as the extender statute here, mandated that "'*the*' statute of limitations for '*any action*' brought by FHFA as conservator '*shall be*' as specified in Section 4617(b)(12)," 712 F.3d at 141 (emphasis in original) (quoting 12 U.S.C. § 4617(b)(12)). The Court also observed that Congress included this direction in the context of a statute that tasked an agency with recovering "'obligations and money' due Fannie Mae and Freddie Mac," *id.* at 141-42, an observation that applies equally to the FDIC in its capacity as a bank receiver or conservator, 12 U.S.C. § 1821(d)(2)(B), (D). Based on this text and structure, this Court concluded:

> The more natural reading of [Section 4617(b)(12)], the one that is both in line with everyday usage and consistent with the objectives of the statute overall, is that by including in HERA a provision explicitly setting out the "statute[s] of limitations" applicable to claims by FHFA, Congress intended to prescribe comprehensive time limitations for "any action" that the Agency might bring as conservator, including claims to which a statute of repose generally attaches.

*UBS*, 712 F.3d at 143 (quoting *UBS*, 858 F. Supp. 2d at 316-17).

The Tenth Circuit recently addressed whether *CTS* changes this analysis, and, in a thoroughly reasoned opinion, held that it does not.[5] *Nomura II*, 764 F.3d at 1203 ("We have considered the impact of *CTS* on this case and conclude it does not alter our original decision."); *see also Rhodes*, 336 P.3d at 966 ("*CTS Corp.*'s analysis does not dissuade us from concluding that the FDIC Extender Statute preempts both statutes of limitations and repose. The FDIC Extender Statute is different than the federal statute that was evaluated in *CTS Corp.*"). As reaffirmed in *Nomura II*, the term "statute of limitations," as it appears in the extender statute, is not framed as a restriction on the time limits the provision displaces. Rather, that term is used to describe the time limits the provision creates. 764 F.3d at 1208; *see also Rhodes*, 336 P.3d at 965-66 ("Rhodes' reading of the FDIC extender statute appears to overlook that the statute's phrase 'statute of limitations' expressly identifies the time limitation set by the FDIC extender statute itself; the

---

[5] The Tenth Circuit had previously agreed with this Court's holding in *UBS* in a decision issued before the Supreme Court decided *CTS*. *Nomura II*, 764 F.3d at 1217-18. The defendants sought certiorari, and, after issuing its decision in *CTS*, the Supreme Court remanded to the Tenth Circuit to determine the impact of that decision. *See Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, 134 S. Ct. 2818 (2014). The Tenth Circuit then issued its decision, described in text, reaffirming its initial ruling. *Nomura II*, 764 F.3d at 1203. The defendants again sought certiorari, arguing that the Tenth Circuit had failed to apply *CTS* in the manner the Supreme Court intended when it vacated and remanded the Tenth Circuit's original decision. The Supreme Court recently denied the defendants' petition. *Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, No. 14-379, 2015 WL 132974, at *1 (U.S. Jan. 12, 2015).

phrase does not refer to the time limitations in other state statutes that the FDIC extender statute displaces."). Thus, contrary to the district court's apparent assumption, the issue here is not whether the term "statute of limitations" in FIRREA encompasses periods of repose; what matters is that this language appears as part of a comprehensive provision that sets the exclusive framework governing the time in which the FDIC is entitled to assert claims. *See NCUA v. Nomura Home Equity Loan, Inc.* ("*Nomura I*"), 727 F.3d 1246, 1260 (10th Cir. 2013) (deeming it important not to "confuse[] what the Extender Statute *does*—sets an all-purpose time frame for [an agency] to bring [] actions on behalf of [a regulated entity]—with what it *replaces*—the preexisting time frames to bring 'any action'") (emphasis in original).

## B. The Extender Statute Is Different From CERCLA, Which Leaves Existing Limitations Frameworks In Place

The two appellate courts that have analyzed extender statutes after *CTS* have found that CERCLA Section 9658 is fundamentally different from those statutes, and that the Supreme Court's holding therefore cannot be imported into this distinct context. *See Nomura II*, 764 F.3d at 1209 ("In light of the fundamental differences between § 9658 and the Extender Statute, we reaffirm our original conclusion, which is sufficient to resolve the instant case: the Extender Statute plainly establishes its own exclusive time limits for NCUA enforcement actions

and displaces all others, including statutes of limitations and repose."); *Rhodes*, 336 P.3d at 966 ("*CTS Corp*'s analysis does not dissuade us from concluding that the FDIC extender statute preempts both statutes of limitations and repose[,] [because] [t]he FDIC extender statute is different than the federal statute that was evaluated in *CTS Corp.*").  Judge Cote likewise concluded that "*CTS* does not disturb" this Court's holding in *UBS*.  *HSBC*, 2014 WL 4276420, at *2; *see also Guinn*, 2015 WL 139386, at *3 (holding that Section 1821 replaces state statute, whether or not it is period of repose).

As these courts have recognized, the decision in *CTS* was based on aspects of CERCLA not relevant here.  Most significantly, the Court emphasized that Section 9658 is, by its express terms, a narrow provision:  "[T]he caption of subsection (a)[] characterizes preemption as an 'exception' to the regular rule," that "'[s]tate law [is] generally applicable,'" *CTS*, 134 S. Ct. at 2185 (alterations in original) (quoting 42 U.S.C. 9658(a)(1) & (a)(2)).  In its text, Section 9658 merely adjusts the "commencement date" for statutes of limitations governing actions by private litigants under certain state law causes of action.  42 U.S.C § 9658(a)(1).  The provision makes clear that "the statute of limitations established under State law" shall otherwise continue to apply.  *Id.* § 9658(a)(2); *see also Nomura II*, 764 F.3d at 1208 ("Rather than setting its own time limit … [CERCLA] recognizes that time limits in state statutes apply.").  "Under this structure," the Supreme

14

Court reasoned, "state law is not pre-empted unless it fits into the precise terms of the exception." *CTS*, 134 S. Ct. at 2185.

Section 1821 is fundamentally different. Starting with its caption, Section 1821 is not a narrow "exception" to the continued operation of state time bars; rather, the extender statute applies "in general" to establish the "Statute of limitations for actions brought by [the] conservator or receiver." 12 U.S.C. § 1821(d)(14). It does so, moreover, by creating an elaborate framework setting entirely new three- and six-year periods, depending on the nature of the FDIC's claims, applicable in "any action." *Id.* The only circumstance in which FIRREA preserves state time periods—in contrast to CERCLA, where such periods remain "generally applicable" (42 U.S.C. § 9658(a)(2))—is where they afford the FDIC *more time* to assert claims. 12 U.S.C. § 1821(d)(14)(A)(i)(II), (ii)(II).

This Court was mindful of these fundamental differences between CERCLA and FHFA's extender statute when it decided *UBS*. In its briefing on that appeal, defendant UBS invoked CERCLA, and argued, as Defendants argued to the district court here, that its narrow usage of the term "statute of limitations" was equally applicable in the context of an agency extender statute. *See* Br. and Special App for Defs.-Appellants at 12-13, 32-33, 35-36, *UBS*, 712 F.3d 136 (2d Cir. Sept. 19, 2012) (No. 12-3207) (Dkt. 59), 2012 WL 4509864, at *12-13, *32-33, *35-36. But as the United States explained as amicus in *UBS*, UBS's "argument fail[ed] to

appreciate the fundamentally different nature of the two provisions." Br. for the United States as Amicus Curiae in Supp. of Appellee at 27, *UBS*, 712 F.3d 136 (2d Cir. Nov. 1, 2012) (No. 12-3207-cv) (Dkt. 172), 2012 WL 5464203, at *27. The HERA extender statute, like Section 1821, "was not enacted to partially preempt statutes of limitations that might otherwise apply to private tort actions" as in CERCLA, but rather "sets an exclusive timing provision designed to ensure that [FHFA] has sufficient time to pursue claims." *Id*. As multiple courts have now held, *e.g.*, *Nomura II*, 764 F.3d at 1203; *Rhodes*, 336 P.3d at 963, *CTS* does not change this conclusion. This Court's holding in *UBS* remains good law.

## II. THE DISTRICT COURT FAILED TO ADDRESS THE FUNDAMENTAL DIFFERENCES BETWEEN FIRREA AND CERCLA

The district court performed no analysis comparing the structure of Section 309 of CERCLA and Section 1821. The district court also failed to address *Nomura II* or otherwise "grapple with the Tenth Circuit's detailed exegesis of the history of the statutes at issue here and the material distinctions that exist between the CERCLA Statute's language construed in *CTS* and the several extender statutes that have created limitations periods for identified federal agencies to file claims." *NCUA v. Morgan Stanley & Co.*, No. 13CV6705 DLC, 2014 WL 5017822, at *3

16

(S.D.N.Y. Sept. 30, 2014).  As a result, the district court assumed incorrectly that isolated terms appearing in CERCLA must be applied in the same way in FIRREA.

Most significantly, the district court presumed that Section 1821's use of the term "statute of limitations" should be given the same, narrow meaning as in CERCLA, without engaging in the contextual analysis that the Supreme Court employed in *CTS* to reach that result.  JA 175 (reasoning that "Congress chose language which focused on and changed the statute of limitations, and left the statute of repose untouched.").[6]  *CTS* itself makes clear that use of the term "statute of limitations" is not dispositive, and that the scope of that term can only be understood in the context of the statute in which it appears.  *CTS*, 134 S. Ct. at 2185.  As the Supreme Court explained, such analysis is necessary because Congress has oftentimes used "statute of limitations" to encompass statutes of repose, and, conversely, has never used "repose" in enacted legislation to refer to a time to bring suit.  134 S. Ct. at 2185-86.  Thus, that the extender statute "never uses the term statute of repose," JA 173 (quotation marks omitted)—a statement

---

[6]  As discussed, *supra*, the extender statute uses "statute of limitations," not to refer back to any previously applicable period, but to describe the newly enacted time for the FDIC to bring suit.  It is therefore irrelevant whether the extender statutes uses "statute of limitations" to encompass periods of repose, since the provision replaces all prior time bars either way.  In any event, as discussed in text, it is clear that FIRREA does in fact use "statute of limitations" broadly, in a manner encompassing repose.

true of every provision in the United States Code—is not remarkable, and, as the Supreme Court made clear, not dispositive.

There is strong indication that "statute of limitations" applies broadly in Section 1821. It is significant, for instance, that Congress used "limitations" in that manner in the very statute the extender statute is acting upon here. The Securities Act sets forth its three-year repose period—the same period the district court enforced against the FDIC—in a provision captioned "Limitations on Actions," without using the term "repose." 15 U.S.C. § 77m; *see also UBS*, 712 F.3d at 143 (explaining that in the Sarbanes-Oxley Act of 2002, § 804, Pub. L. No. 107-204, 116 Stat. 745, 801 (codified at 28 U.S.C. 1658(b)), Congress "extended" a statute of repose in a section entitled "Statute of Limitations for Securities Fraud"). The most natural conclusion is that the extender statute, in setting "the applicable statute of limitations," replaces all aspects of the "Limitations" period that would otherwise apply. In the case of the Securities Act, that would include a period of repose. But under the district court's construction, Congress used the term "limitations" more narrowly in Section 1821 than in one of the timeliness provisions it was extending. Congress undoubtedly understood that agency conservators or receivers, acting for troubled or failed financial institutions, might pursue claims under the federal securities laws, and there is no reason to conclude that Congress intended such a disconnect. *Cf. UBS*, 712 F. 2d at 142 ("[I]t must

have been evident to Congress when it was enacting HERA that FHFA would have to consider potential claims under the federal securities and state Blue Sky laws. It would have made no sense for Congress to have carved out securities claims from the ambit of the extender statute").

Further, the district court failed to consider that FIRREA, unlike CERCLA, includes multiple provisions in which "statute of limitations" is used according to a broad definition encompassing statutes of repose. Section 1821(d)(6)(B) and (d)(8)(D) set strict 60- and 30-day deadlines, respectively, for appealing the FDIC's disallowance of a claim, "without allowing accrual or tolling—yet are clearly labeled 'statutes of limitations.'" *Nomura I*, 727 F.3d at 1261. As the Tenth Circuit recognized, this usage of "statute of limitations," setting "a fixed time limit and commenc[ing] from the date of the challenged event," demonstrates "a broader meaning … encompass[ing] statutes of repose." *Id.* "[T]hese provisions further support a broad construction of 'statute of limitations' [in HERA] to encompass statutes of repose." *HSBC*, 2014 WL 4276420, at *4.

The district court also erred in concluding that the presence of the term "accrue" in Section 1821 means that the provision cannot replace the repose period in the Securities Act, because the Securities Act "has nothing to do with when a claim accrues." JA 174. But Section 1821(d)(14) does not use "accrue" to refer back to the time period it is replacing; rather, it uses that term to refer to the

19

starting point for a new time period that Congress created specifically for the

FDIC, 12 U.S.C. § 1821(d)(14)(A)(i)(I), (ii)(I), (B)(ii). While an *adjustment* to the

accrual date of an existing time bar could only operate on a statute of limitations

(which is the only type of time bar that includes such a date), *CTS*, 134 S. Ct. at

2187, the *creation* of an accrual date in the extender statute is fully consistent with

Congress's intent to establish a single timeliness provision for all claims to be

asserted by the FDIC, when acting as conservator or receiver. *Nomura I*, 727 F.3d

at 1260 ("The mere fact that the new time period in the Extender Statute could be

subject to accrual does not prevent it from displacing a time limit that is not, *i.e.*, a

repose period.").[7]

The district court also ignored the Tenth Circuit's observation that, while the

extender statute makes one of its triggering dates the "period beginning on the date

the claim accrues" (12 U.S.C. § 1821(d)(14)(A)(i)(I)), it also—unlike CERCLA—

---

[7]  The district court made a similar error when it deemed it significant, as it had been in the CERCLA context, that FIRREA references "statute of limitations" in the singular.  JA 174.  As discussed above, while FIRREA creates a new framework governing the FDIC's time to bring suit, CERCLA merely "altered particular preexisting state statutes of limitations in only one limited respect—by changing the date on which the cause of action accrued."  *Nomura II*, 764 F.3d at 1209 (quotation marks omitted).  Thus, while CERCLA's use of "statute of limitations," in the singular, to refer back to the provision it modifies, would be inconsistent with an intent to modify both limitations periods and periods of repose, *CTS*, 134 S. Ct. at 2186-87, the use of the singular "statute of limitations" in FIRREA is fully consistent with Congress's creation of an exclusive new framework governing the timeliness of "any action" by the FDIC as receiver or conservator.

20

"includes the concept of repose." *Nomura II*, 764 F.3d at 1211. Section 1821's limitation period may begin to run on "the date of the appointment of [FDIC] as conservator or [receiver]," *id.* (quotation omitted), which, as the Tenth Circuit reasoned, is an event unrelated to a plaintiff's discovery of its injury, and therefore more akin to a period of repose than one of limitations. *Id.* That the FDIC extender statute includes a repose component further reinforces the conclusion that Congress's use of "statute of limitations" is not limited, as it was in CERCLA, to the most narrow usage of that term. *Id.*

## III.   THE DISTRICT COURT DECISION CONTRADICTS FIRREA'S LEGISLATIVE HISTORY AND PURPOSE

The district court performed a cursory analysis of FIRREA's "[l]egislative [h]istory and [p]urpose," reasoning that the extender statute advances Congress's purpose to "increase[] the FDIC's ability to collect money through litigation," by extending limitations periods, even while leaving repose periods intact.   JA 175-76. But this Court rejected that analysis when it examined the FHFA extender statute in *UBS*. The Court explained that extender statutes are designed to give agency plaintiffs "at least three years from the commencement of a conservatorship to bring suit" so they can have "the time to investigate and develop potential claims on behalf of" failed financial institutions, and that the continued application of repose periods would frustrate that purpose. *UBS*, 712 F.3d at 142 & n.2. That

21

is true here as well: the district court's holding deprives the FDIC of the statutory three-year period, and renders substantial claims untimely even though they were brought within that prescribed time.[8]

The pertinent legislative history provides strong indication that Congress did not intend for the FDIC to lose claims in this way. "Congress enacted [FIRREA] with the objects of preventing the collapse of the [savings and loan] industry, attacking the root causes of the crisis, and restoring public confidence." *United States v. Winstar Corp.*, 518 U.S. 839, 856 (1996) (citation omitted); *see also Nomura I*, 727 F.3d at 1262 (similar); *UBS*, 712 F.3d at 142 (similar for HERA); FIRREA, 103 Stat 183, § 101 (listing purposes of FIRREA). To accomplish these objectives, FIRREA charged the FDIC with "responsibilities" that were "extensive, diverse, and difficult," H.R. REP. 101-54, 442, 1989 U.S.C.C.A.N. 86, 238, including overseeing "all aspects of insurance of [thrift] accounts, … administration of [a newly-created] deposit insurance fund," Allocation of Regulations and Orders Pursuant to FIRREA, 54 F.R. 41359-02, and "collect[ing] all obligations and money due" to institutions in receivership or conservatorship,

---

[8] The FDIC was appointed receiver for Colonial Bank on August 14, 2009. Under the district court's construction, its claims pertaining to the FHAMS 2007-FA1 certificate, with a value exceeding $49,000,000, expired within six months and nine days of its appointment. *See* JA 104 (Am. Cmplt., Schedule 6); February 23, 2007, Prospectus Supplement for FHAMS 2007-FA1 Securitization (*available at* http://www.sec.gov/Archives/edgar/data/1387481/000093041307001680/c4697 2_424b5.htm*)*; 15 U.S.C. § 77m.

12 U.S.C. § 1821(d)(2)(B)(ii). Senator Riegle (then-Chairman of the Senate Banking Committee and a sponsor of FIRREA) explained to his colleagues that the extender statute was "of the utmost importance[ ]" to this legislative framework, 135 Cong. Rec. S10,205 (daily ed. Aug. 4, 1989), and that it "should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods," *id.*[9] In sum, Congress gave the FDIC substantial responsibility, and enacted Section 1821 specifically to ensure that it would have the time to perform its duties.

FHFA's and NCUA's experiences confirm that an agency conservator or receiver requires substantial time to perform its statutory functions, and that Congress therefore must have intended that its extender statutes would ensure such a time period, unrestricted by any shorter periods of repose. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1330 (2011) (court interpreting statutory text should "consider[ ] the purpose and context of the statute") (quotation marks omitted). The defendants in all 16 actions by FHFA in

---

[9] As FIRREA's sponsor, Senator Riegle's "statement to the full Senate carries considerable weight," *Corley v. United States*, 556 U.S. 303, 318 (2009); *see also SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 242 & n.21 (5th Cir. 1999) (citing Senator Riegle's statements as indication of Congress's "stated purpose[ ] in enacting FIRREA … to 'strengthen the enforcement powers of Federal regulators of depository institutions.'") (quoting FIRREA § 101(9), 103 Stat. 187).

the Southern District of New York acknowledged that those actions were brought within the time provided by the applicable extender statute, but nevertheless sought to dismiss those actions as untimely pursuant to federal and state repose periods. According to the defendants' unsuccessful argument, FHFA lost its ability to pursue claims on billions of dollars of RMBS certificates within weeks or months of being appointed conservator of the GSEs.[10]  That would not have been adequate time for FHFA to perform the investigation necessary to identify and formulate claims relating to complex RMBS investments—an investigation that required FHFA to issue subpoenas to collect individual loan files, and to re-underwrite hundreds or thousands of loans.  Consequently, it would not have been adequate time for FHFA to fulfill its statutory mission to collect amounts due to the GSEs. 12 U.S.C. § 4617(b)(2)(B), (D).  As this Court has already recognized, it would

---

[10]  In its action against Merrill Lynch & Co., Inc., for example, FHFA's Securities Act claims pertaining to RMBS certificates with a value of $553,717,000.00 would have expired, if subject to Section 13's period of repose, less than one month after FHFA's appointment as conservator on September 6, 2008.  *See* Am. Cmplt., *FHFA v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 6202 (DLC) (S.D.N.Y.), Dkt. 61 ¶ 38 & tbl. 2 (asserting claims pertaining to SURF 2005-AB3 and MLMI 2005-AR1 certificates issued September 2005); 15 U.S.C. § 77m.  Similarly, in NCUA's action against RBS Securities Inc. in the District of Kansas, NCUA's Securities Act claims pertaining to an RBMS certificate with a value of $125,000,000 would have expired one month and four days after its appointment as conservator of U.S. Central Federal Credit Union.  *See* Compl. at 4, tbl. 1, *NCUA v. RBS Sec., Inc.*, No. 2:11-cv-02340-RDR-KGS (D. Kan. filed June 20, 2011) (securities purchase on April 24, 2006); *id.* ¶ 13 (date of conservatorship March 20, 2009).

24

have "made no sense" for Congress to design an extender statute that failed to afford the relevant agency sufficient time to do its work. *UBS*, 712 F.3d at 142.

There is nothing in *CTS* that even hints at rejecting this Court's reasoning in *UBS* that an extender statute, designed identically to the statute at issue here, was intended to afford an agency plaintiff at least three years to bring suit upon being appointed conservator or receiver to a distressed financial institution. The Supreme Court in *CTS* examined a statute with a fundamentally different legislative history and purpose than the one at issue here. The Court in *CTS* emphasized that Congress enacted Section 9658 after reviewing a 1982 Study Group Report, which Congress itself had commissioned, that "clearly urged the repeal of statutes of repose as well as statutes of limitations." *CTS*, 134 S. Ct. at 2186. *CTS* therefore reasoned that Congress acted purposefully when it referenced one category and not the other in CERCLA. *Id*. But as the Tenth Circuit emphasized in *Nomura II*, there is nothing "remotely similar" in FIRREA's legislative history. 764 F.3d at 1215-16.

In sum, the district court's construction of Section 1821 fails to take into account Congress's evident purpose to give the FDIC time "to investigate and determine what causes of action it should bring on behalf of a failed institution," *FDIC v. Barton*, 96 F.3d 128, 133 (5th Cir. 1996), so that it may fulfill its statutory mission, as conservator or receiver, to "preserve and conserve the assets and

property of such institution," and "collect all obligations and money due." 12 U.S.C. § 1821(d)(2)(B)(ii), (iv).  It takes more than days or weeks for a bank receiver to stabilize a distressed financial institution, to review its transactions and investments, and to investigate, identify and formulate potential claims.  Congress understood that when it enacted an extender statute affording the FDIC at least three years to perform those functions—just at it understood those considerations when it enacted HERA.  The district court erred when it failed to adhere to those legislative purposes and rejected this Court's analysis in *UBS*.

## IV.  THE DISTRICT COURT FAILED TO RECOGNIZE THAT THE FDIC, AS AN AGENCY OF THE FEDERAL GOVERNMENT, IS ENTITLED TO A PRESUMPTION THAT ITS CLAIMS ARE TIMELY

The district court's narrow interpretation of the extender statute also fails to account for the fact that the FDIC is entitled to a presumption, not available to the private plaintiffs in *CTS*, that its claims are timely.  The Supreme Court has held that, "when the sovereign elects to subject itself to a statute of limitations, the sovereign is given the benefit of the doubt if the scope of the statute is ambiguous." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 96 (2006).  This Court has already determined that statutory language materially identical to that at issue on this appeal unambiguously supports a construction that the FDIC's claims are not

subject to any period of repose. *UBS*, 712 F.3d at 143. But even if the extender statute were "ambiguous," the FDIC is an agency of the federal government, and the extender statute should therefore be construed in its favor. *Burton*, 549 U.S. at 95-96; *see also FDIC v. Former Officers & Dirs. of Metro. Bank*, 884 F.2d 1304, 1309 (9th Cir. 1989) (reasoning, in a case brought by FDIC as receiver, that, "[t]o the extent that a statute is ambiguous in assigning a limitations period for a claim, we will interpret it in a light most favorable to the government").[11]

---

[11] An agency acting as receiver or conservator does not lose its government status merely because it steps into the shoes of a private institution. *See FHFA v. Royal Bank of Scotland Grp. PLC*, 2012 WL 3580522, *4 (D. Conn. Aug. 17, 2012) ("[T]he fact that a federal agency has stepped into the shoes of a person who would be a private plaintiff does not convert the federal agency into a private plaintiff …. It simply makes it a federal agency standing in the shoes of a person who would be a private plaintiff."); *see also Nomura II*, 764 F.3d at 1217 ("Although we see no reason why this rule would not apply to Securities Act claims by the NCUA and we note that Appellant comes nowhere close to showing their own strained interpretation of the Extender Statute is unambiguous, the rule is not needed here.") (quotation marks omitted); *cf. Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991) (stating that it was "appropriate[ ]" to treat Resolution Trust Company, proceeding as a receiver under FIRREA, as the government for purposes of preliminary injunction analysis).

## **CONCLUSION**

For the reasons set forth above, *amici* FHFA and NCUA respectfully support appellant FDIC's argument for reversal.

DATED:   New York, New York           Respectfully submitted,
         February 2, 2015

/s/ David C. Frederick                   /s/ Kathleen M. Sullivan
David C. Frederick                       Kathleen M. Sullivan
Wan J. Kim                               Philippe Z. Selendy
Gregory G. Rapawy                        Adam M. Abensohn
KELLOGG, HUBER, HANSEN, TODD,            QUINN EMANUEL URQUHART
   EVANS & FIGEL, P.L.L.C.                  & SULLIVAN, LLP
1615 M Street, N.W., Suite 400           51 Madison Avenue, 22nd Floor
Washington, D.C. 20036                   New York, New York 10010
(202) 326-7900                           (212) 849-7000
*Counsel for Amicus National Credit*     *Counsel for Amicus Federal*
*Union Administration Board*             *Housing Finance Agency*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because it contains 6,949 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

/s/ Kathleen M. Sullivan
Kathleen M. Sullivan

*Counsel for Amicus Federal Housing Finance Agency*

Dated: February 2, 2015