# No. 14-3648

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,

Plaintiff-Appellant,

v.

FIRST HORIZON ASSET SECURITIES, INC., FIRST HORIZON HOME LOAN CORPORATION, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., FTN FINANCIAL SECURITIES CORP., HSBC SECURITIES (USA) INC., RBS SECURITIES INC., UBS SECURITIES LLC, WELLS FARGO ASSET SECURITIES CORPORATION,

Defendants-Appellees,

CHASE MORTGAGE FINANCE CORP., JP MORGAN CHASE & CO., JP MORGAN SECURITIES LLC, CITICORP MORTGAGE SECURITIES, INC., CITIMORTGAGE, INC., CITIGROUP GLOBAL MARKETS INC., ALLY SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

Defendants.

_____

On Appeal From the United States District Court
for the Southern District of New York, No. 12 Civ. 6166(LLS)

## BRIEF OF APPELLANT FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK

Colleen J. Boles
**Assistant General Counsel**
Kathryn R. Norcross
**Senior Counsel**
Jaclyn C. Taner
James Scott Watson
**Counsel**
FEDERAL DEPOSIT INSURANCE CORPORATION
3501 Fairfax Drive, VS-D7006
Arlington, Virginia 22226
(703) 562-2373
*Attorneys for FDIC as Receiver*

Dated: January 26, 2015

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES .................................................................iv

JURISDICTIONAL STATEMENT ........................................................... 1

ISSUE PRESENTED FOR REVIEW ...................................................... 1

STATEMENT OF THE CASE ................................................................. 2

Nature of the Case ................................................................................. 2

Statement of Facts ................................................................................. 5

Course of Proceedings ........................................................................... 7

SUMMARY OF ARGUMENT ................................................................. 9

ARGUMENT ......................................................................................... 16

I.     Standard of Review ...................................................................... 16

II.    This Court's Holding in UBS That the Extender Statute Replaces Periods of Repose Remains Sound, And the Same Result Should Apply Here ........................................................... 15

        A.    The Extender Statutes' Plain Language Demonstrates Congress' Intent to Afford the FDIC a Minimum of Three Years from Receivership to Assert Claims ................ 17

        B.    *CTS* Provides No Basis for Departing From *UBS* ............... 26

               1.    No Textual Support Exists for the District Court's Conclusion that FIRREA Section 1821(d)(14) and CERCLA Section 309 Are Similar ............................... 27

i

2. The District Court Failed to Properly Take Account of the Structural Differences Between the Statutes .................................................................. 30

C. The District Court Misread the Extender Statute's Legislative History and Purposes ........................................ 34

CONCLUSION

RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

**PAGE(S)**

*Ali v. Federal Bureau of Prisons,*
    552 U.S. 214 (2008) ........................................................................ 20

*Beckley Capital Ltd. P'Ship v. DiGeronimo,*
    184 F.3d 52 (1st Cir. 1999) ............................................................ 25

*CTS Corp. v. Waldburger,*
    134 S.Ct 2175 (2014) ............................................................ *passim*

*Consol. Edison Co. v. UGI Utils., Inc.,*
    423 F.3d 90 (2d Cir. 2005) ............................................................ 16

*FDIC v. Goldman Sachs & Co.,*
    2014 WL 4161567 (W.D. Tex. Aug. 18, 2014) ............................... 26

*FDIC v. J.P. Morgan Acceptance Corp. I,*
    958 F. Supp. 2d 1002 (S.D. Ind. 2013) .......................................... 36

*FDIC v. N.H. Ins. Co.,*
    953 F.2d 478 (9th Cir. 1991) .......................................................... 3

*FDIC v. Wright,*
    942 F.2d 1089 (7th Cir. 1991) ....................................................... 36

*FDIC as Receiver for Colonial Bank v. Chase Mort. Fin. Corp.,*
    __F. Supp. 2d__, 2014 WL 4354671 (S.D.N.Y. Sept. 2, 2014) ......... 9

*FDIC as Receiver for Community Bank of Nevada v. Rhodes,*
    336 P.3d 961 (Nev. 2014) ............................................. 16, 23, 25, 27

*Federal Energy Admin. V. Algonquin SNG, Inc.*,
    426 U.S. 548 (1976) ...................................................................... 36

*Federal Housing Finance Agency v. UBS Americas Inc., et al*,
    712 F.3d 136 (2d Cir. 2013)................................................... *passim*

*Federal Housing Finance Agency v. UBS Americas, Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012) ............................................ 37

*FHFA v. HSBC North America Holdings, Inc.*,
    2014 WL 4276420 (S.D.N.Y. Aug. 28, 2014) ........................... 16, 23

*Guinn v. FDIC*,
    2015 WL 139386 (D. Nev. Jan. 12, 2015) ..................................... 16

*Kirkendall v. Halliburton, Inc.*,
    707 F.3d 173 (2d Cir. 2013)........................................................... 14

*NCUA v. Nomura Home Equity Loan, Inc.*,
    727 F.3d 1246 (10th Cir. 2013) ("*Nomura I*")..................... 20, 22, 23

*NCUA v. Nomura Home Equity Loan, Inc.*,
    764 F.3d 1199 (10th Cir. 2014) ("*Nomura II*") ...................... *passim*

*Nomura Home Equity Loan, Inc. v. NCUA*,
    134 S.Ct. 2818 (2014) .................................................................... 23

*Nomura Home Equity Loan, Inc. v. NCUA*,
    2015 WL 132974 (Jan. 12, 2015) ................................................... 23

*Pettus v. Morgenthau*,
    554 F.3d 293 (2d Cir. 2009)........................................................... 18

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ....................................................................... 18

*SMS Financial LLC v. ABCO Homes, Inc.*,
    167 F.3d 235 (5th Cir. 1999) ........................................... 2, 23, 24, 36

*UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*,
  168 F.3d 1173 (10th Cir. 1999) ....................................... 35

*United States v. Gonzales*,
  520 U.S. 1 (1997) ........................................................ 20

*United States v. Polouizzi*,
  520 U.S. 1 (1997) ........................................................ 15

*United States v. Robbins*,
  520 U.S. 1 (1997) ........................................................ 16

*Ziemba v. Wezner*,
  366 F.3d 161 (2d Cir. 2004) ............................................ 15

## STATUTES

12 U.S.C. § 1787(b)(14) ............................................... 3, 20

12 U.S.C. § 1821(d)(2)(B)(ii) .............................................. 6

12 U.S.C. § 1821(d)(2)(E) ................................................. 6

12 U.S.C. § 1821(d)(2)(F) ................................................ 35

12 U.S.C. § 1821(d)(2)(G) ............................................... 35

12 U.S.C. § 1821(d)(2)(I) ................................................ 35

12 U.S.C. § 1821(d)(14) .............................................. *passim*

12 U.S.C. § 4617(b)(2)(B)(ii) ............................................ 20

12 U.S.C. § 4617(b)(12) ............................................ 3, 17, 22

15 U.S.C. § 77m ................................................... 8, 18, 28

28 U.S.C. § 1291 .......................................................... 1

v

28 U.S.C. § 1331................................................................................. 1

42 U.S.C. § 9658......................................................................... 4, 26

42 U.S.C. § 9658(a)(1)......................................................... 12, 30, 32

42 U.S.C. § 9658(a)(2)......................................................................... 33

## OTHER AUTHORITIES

135 Cong. Rec. S10182-01, 1989 WL 193738 (daily ed. Aug. 4, 1989) . 2, 3

135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of
    Senator Donald W. Riegle, Jr.) ................................................ 24, 35

H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 330,
    *reprinted in* 1989 U.S. Code Cong. & Admin. News 86 ..................... 37

*Webster's Third New International Dictionary* 97 (1976) ....................... 20

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 12 U.S.C. § 1819 and 28 U.S.C. § 1331 over this action for violations of Sections 11 and 15 of the Securities Act of 1933 ("1933 Act").

On September 5, 2014, the district court granted defendants' Rule 12(c) motion for judgment on the pleadings and entered final judgment dismissing as time-barred the Federal Deposit Insurance Corporation as Receiver for Colonial Bank's ("FDIC's") complaint in its entirety. The FDIC filed a timely Notice of Appeal on September 25, 2014. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

12 U.S.C. § 1821(d)(14) (the "FDIC Extender Statute") gives the FDIC at least three years from the date of its appointment as a bank receiver to bring any claim. In *Federal Housing Finance Agency v. UBS Americas Inc.,* 712 F.3d 136, 143 (2d Cir. 2013) ("*UBS*"), this Court construed a materially identical statutory provision, and held that the extender statute governing claims brought by the Federal Housing Finance Agency ("FHFA"), established the exclusive time period in which to assert claims and thus precluded application of the repose

period in Section 13 of the Securities Act of 1933. Did the district court err by nevertheless dismissing the FDIC's Securities Act claims as untimely, pursuant to that same repose period, thereby refusing to apply this Court's precedent?

## STATEMENT OF THE CASE

**Nature of the Case**

This is an appeal from a district court order disregarding this Court's precedent and dismissing as time-barred the FDIC's suit seeking recovery—for the benefit of the failed bank's depositors and other creditors—of substantial losses caused by the defendants' violations of federal securities laws.

In response to the savings and loan crisis, Congress enacted the FDIC Extender Statute, as part of FIRREA,[1] "to help ensure the accountability of the persons responsible for massive losses" incurred by federally-insured institutions and to maximize FDIC receivers' "potential recoveries" through litigation. *SMS Fin. LLC v. ABCO Homes*, 167 F.3d 235, 242 n.21 (5th Cir. 1999), quoting 135 Cong. Rec.

---

[1] Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, § 212, *codified in* 12 U.S.C. § 1821(d)(14).

2

S10182-01 (1989); *FDIC v. N.H. Ins. Co.*, 953 F.2d 478, 486-87 & n.2 (9th Cir. 1991) (relying on the same statement).  To ensure that the receivers have adequate time to investigate potential claims, Section 1821(d)(14) establishes "the applicable statute of limitations with regard to any action brought by [the FDIC] as conservator or receiver." The period set forth in Section 1821(d)(14) is a minimum of three years from the FDIC's appointment as receiver for a failed financial institution.

In *FHFA v. UBS Ams., Inc.*, 712 F.3d 136, 142 (2d Cir. 2013), this Court construed language of FHFA's extender statute that is materially identical to Section 1821(d)(14)[2] and determined that FHFA had at least three years to bring suit—including claims under Section 13 of the Securities Act—running from the date FHFA was appointed conservator  without regard to any previously applicable statute of limitations or period of repose.

---

[2] The statutory language at issue in this appeal is materially identical to language in 12 U.S.C. 4617(b)(12)(A) of the Housing and Economic Recovery Act of 2008 ("HERA"), the FHFA extender statute, and in 12 U.S.C. § 1787(b)(14)(A), the FIRREA provision establishing the statute for the National Credit Union Administration ("NCUA") in its role as receiver for insured federal credit unions.  This brief refers to the three statutory provisions collectively as the "Extender Statutes."

Here, the FDIC asserted Securities Act claims against Defendants, and filed its complaint within three years of the date it was appointed receiver—Section 1821(d)(14)'s three-year time period. The district court nevertheless refused to apply *UBS* and give effect to the FDIC Extender Statute's time limits. Instead, the court applied the three-year Securities Act repose period running from the date the disputed securities were offered to the public, and dismissed the FDIC's claims as untimely. The district court's ruling conflicts squarely with this Court's holding that the plain language of the FHFA Extender Statute, which is materially identical to the Extender Statute here, creates a "comprehensive" timeliness provision that displaces all prior limitations, including periods of repose. 712 F.3d at 142.

The district court sought to justify its departure from this Court's holding in *UBS* by relying on the subsequently decided *CTS Corp. v. Waldburger*, 134 S. Ct 2175 (2014) ("*CTS*"), in which the Supreme Court construed the term "statute of limitations" as it appears in Section 309 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9658. As multiple courts have since held, however—including the only two appeals courts to have

4

considered the issue—the decision in *CTS* provides no basis for departing from this Court's holding in *UBS*. As those courts have recognized, the Extender Statutes are fundamentally different from CERCLA, and use the term "statute of limitations" in a dissimilar context and for a broader purpose.

Accordingly, the district court's judgment should be reversed pursuant to this Court's holding in *UBS*, which remains good law, and the case remanded to allow the FDIC to pursue its 1933 Act claims.

## Statement of Facts

Colonial Bank ("Colonial") was a federally-insured bank headquartered in Montgomery, Alabama. Between June 5, 2007 and October 19, 2007, Colonial invested approximately $300 million in nine residential mortgage-backed securities ("RMBS") issued or underwritten by Appellees.[3] JA 043; 077; 082; 088; 093; 099; 104; 110;

---

[3] RMBS are created by the process of securitization. In a securitization, a large number of loans, usually of a similar type, are grouped together into a collateral pool. The loans' originators sell them to a trust for cash. Title to the loans is first transferred to an entity known as a depositor, which then transfers the title to the trust. As the new owner of the mortgage loans, the trust is entitled to receive all payments of principal and interest (the cash flow) on the mortgage loans. To finance its purchase of the mortgage loans, the trust issues bonds, usually called certificates, which are sold to investors. JA 040-41. The certificates are designed to meet the needs of different types of

116; 122; 128; 134. The Bank sustained heavy losses on the certificates. JA 073.

On August 14, 2009, the Alabama State Banking Department closed Colonial and appointed the FDIC as receiver. As receiver the FDIC is empowered, *inter alia*, "to collect all obligations and money due the institution," and to "proceed to realize upon [the institution's] assets." 12 U.S.C. §1821(d)(2)(B)(ii), (d)(2)(E).

The FDIC tested the truth of the Appellees' disclosures in the offering documents for the RMBS they sold to Colonial, including the prospectus supplements, and discovered that in issuing and underwriting the certificates, the Appellees had made material misstatements and omissions about the credit quality of the only source of payment for the investment—the collateral pool of residential mortgage loans that backed the certificates. These false statements and omissions misled investors regarding the investment risks of the certificates, which were far riskier than Appellees had disclosed. JA

---

investors. For example, some certificates enjoy a higher priority of payment from the cash flow, but pay a lower rate of interest than others. JA 041.

044-065; 078-081; 083-087; 089-092; 094-098; 100-103; 105-109; 111-115; 117-121; 123-127; 130-133; 135-139.

For example, the FDIC discovered that the prospectus supplements overstated the amount of equity that borrowers had in the houses that secured those mortgage loans, the single most important measure of the credit quality of a mortgage loan. More equity means that it is less likely that the borrower will default and more likely that the value of the house will cover the balance of the mortgage loan if the borrower does default. The prospectus supplements also misrepresented the number of loans that were issued for owner occupied properties, which is another key piece of information bearing on the likelihood that a loan will be repaid. Further, the prospectus supplements misrepresented that the originators of the mortgage loans followed certain underwriting guidelines in making the loans.

**Course of Proceedings**

On August 10, 2012, within three years of its appointment as receiver, but more than three years after Colonial purchased the certificates, the FDIC filed a complaint, asserting claims under Sections 11 and 15 of the Securities Act, in the United States District Court for

7

the Southern District of New York against the Appellees as well as Ally Securities LLC; Chase Mortgage Finance Corp.; JP Morgan Chase & Co.; JP Morgan Securities LLC; Citigroup Mortgage Securities, Inc.; CitiMortgage, Inc.; Citigroup Global Markets Inc.; and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively "Settling Parties"). JA 014. The FDIC resolved its claims against the Settling Parties.

On December 4, 2012, the FDIC served an Amended Complaint, again asserting claims under Sections 11 and 15 of the Securities Act. JA 035. On January 17, 2013, the Defendants filed a motion to dismiss contending, among other things, the FDIC's claims were time-barred under the three year repose period set forth in the Securities Act, 15 U.S.C. § 77m (entitled "Limitation of actions"), as amended by Securities Exchange Act of 1934, ch. 404, § 207, 48 Stat. 908. After this Court decided *UBS*, defendants withdrew their repose argument, but reserved the right to renew it at a later date. JA 025, Docket 81 at n.4. Defendants reasserted the repose argument on July 3, 2014 in a Rule 12(c) motion for judgment on the pleadings after the Supreme Court decided *CTS* in June 2014. *Id.*

8

In an Opinion and Order dated September 2, 2014, district court Judge Louis L. Stanton granted the Rule 12(c) motion and dismissed the FDIC's action.  JA 166. The district court acknowledged this Court's holding in *UBS*, but declined to follow that decision, concluding that it was superseded by the Supreme Court's decision in *CTS*.  On that basis, the district court held that the minimum three-year period running from the receivership date in the FDIC Extender Statute does not displace the three-year repose period running from the certificates' sales date set forth in Section 13 of the Securities Act, and that the FDIC's claims were therefore untimely.  JA 166, *reported as FDIC as Receiver for Colonial Bank v. Chase Mort. Fin. Corp.*, --- F. Supp. 2d ---, 2014 WL 4354671 (S.D.N.Y. Sept. 2, 2014).  This appeal followed.[4]

## SUMMARY OF ARGUMENT

The district court had no basis to depart from this Court's controlling authority to dismiss the FDIC's federal securities claims as

---

[4] After the FDIC filed this appeal, the FDIC and all Bank of America related entities settled all the claims between them, including the FDIC's claims in this case against Merrill, Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch").  On November 20, 2014, Merrill Lynch and the FDIC filed a stipulated motion to dismiss Merrill Lynch from the appeal with prejudice, which the Court entered on November 21, 2014.  The dismissal does not affect the FDIC's claims against the remaining appellees.

untimely. Under Section 1821(d)(14)(A), "the applicable statute of limitations" for "any action brought by the [FDIC] as . . . receiver shall be" a minimum of three years from FDIC's appointment as receiver. This Court–as well as other appellate courts that have addressed Section 1821(d)(14) and substantively identical Extender Statutes–has concluded that the plain language supports only one natural and correct reading: that the Extender Statutes set comprehensive time periods to bring suit that displace all prior limitation periods, including periods of repose. The FDIC filed its claims within three years of its appointment as receiver for Colonial—the FDIC Extender Statute's *minimum* time period. Consequently, the FDIC's suit was timely.

The district court erroneously rejected this Court's holding in *UBS*, and concluded that the minimum three-year period running from the receivership date in the FDIC Extender Statute does not displace the Securities Act's three-year repose period. Adopting an interpretation this Court previously rejected, the district court imported the Supreme Court's narrow construction of the term "statute of limitations," as that term is used in CERCLA, into the far different context of the FDIC Extender Statute.

But nothing in the Supreme Court's analysis of the CERCLA provision in *CTS* supports departing from this Court's controlling decision in *UBS*. In fact, the Supreme Court made clear in *CTS* that Congress has frequently used the term "statute of limitations" to encompass periods of repose, and that it is therefore necessary to examine the unique features of the statute in which that term appears to determine which usage Congress intended. That is the same statute-specific analysis this Court has already performed, and its holding that the FHFA Extender Statute creates comprehensive timeliness provisions that displace all prior time bars, including periods of repose, remains sound and applicable here.

In rejecting this Court's holding in *UBS*, the district court made the identical error that the Tenth Circuit pointed out when it recently concluded that *CTS* did not alter its earlier holding that NCUA's Extender Statute replaced previously applicable periods of repose. *See NCUA v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199 (10th Cir. 2014) (*"Nomura II"*), *cert. denied* __S. Ct.__, 2015 WL 132974, 83 USLW 3244 (U.S. Jan. 12, 2015). Specifically, the district court failed to recognize that the structure of the FDIC's Extender Statute is

11

fundamentally different from the structure of Section 309 of CERCLA. As the Tenth Circuit explained, the CERCLA provision at issue in *CTS*, which the statute labels an "Exception[ ]" to the continued application of state law, 42 U.S.C. § 9658(a)(1), does not create a new timeliness provision, but rather adjusts the start date for the still controlling State "statute of limitations." "Under this structure. . . state law is not preempted unless it fits into the precise terms of the exception." *Nomura II,* 764 F.3d at 1208 (quoting *CTS,* 134 S. Ct. at 2185).

Here the statutory context is "fundamentally different." *Nomura II,* 764 F.3d at 1217. In Section 1821(d)(14), Congress did not use the term "statute of limitations" to describe a state time period that was being adjusted. Rather, the Extender Statute uses the term "statute of limitations" to describe the new timeliness provision that the statute create. Moreover, the Extender Statute is not framed as a narrow "exception[s]" to State law, but, rather, as a comprehensive provision creating a new timeframe for the FDIC to bring suit. In this appeal, then, the outcome does not turn on the meaning of the term "statute of limitations" or on the distinction between periods of limitations and repose. Rather, as this Court already recognized, it turns on the fact

that the Extender Statute establishes a "comprehensive" framework governing the time period applicable for any action brought by the FDIC, and thereby replaces all prior time bars, "including claims to which a statute of repose generally attaches." *UBS*, 712 F.3d at 143 (quotations and emphasis omitted). Or as the Tenth Circuit put it, the language of the FDIC Extender Statute "establish[es] all-purpose time limits for any actions" brought by the FDIC. *Nomura II,* 764 F.3d at 1208.

Further, even if the Court needed to construe the term "statute of limitations" to decide this appeal, unlike CERCLA Section 309, Section 1821(d)(14)'s unique structure and legislative history support a broad reading that encompasses statutes of repose. The Supreme Court observed in *CTS* that Congress has often used the term "statute of limitations" to describe all time bars, including repose periods. 134 S. Ct. at 2185. Further, whereas the Court in *CTS* identified legislative history indicating that Congress purposefully distinguished limitations periods from repose periods in CERCLA, there is no such history here. To the contrary, Congress acted with the express purpose of providing the FDIC with sufficient time to perform its functions, including

13

asserting claims and collecting damages in its role as receiver. As this Court already held in *UBS*, the narrow construction adopted by the district court would defeat that purpose.

In sum, unlike the CERCLA provision at issue in *CTS,* Section 1821(d)(14)'s text, structure, and history demonstrate Congress' clear intent to create new uniform time periods for actions brought by the FDIC as receiver, and to substitute those periods for all otherwise applicable time limits, including periods of repose. The district court's judgment dismissing the FDIC's claims as untimely, which is directly at odds with this Court's decision in *UBS,* should be reversed.

## ARGUMENT

## I. Standard of Review

The Court reviews a district court's grant of judgment on the pleadings under Rule 12(c) *de novo,* determining whether the complaint states a valid claim for relief when viewed in the light most favorable to the plaintiff. *Kirkendall v. Halliburton, Inc.,* 707 F.3d 173, 178 (2d Cir. 2013). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all

14

reasonable inferences in favor of the nonmoving party." *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir. 2004).

## II. This Court's Holding in *UBS* That The Extender Statute Replaces Periods Of Repose Remains Sound, And The Same Result Should Apply Here

Congress enacted materially identical Extender Statutes for the FDIC, the FHFA and the NCUA to address unique circumstances relating to failed financial entities. In *UBS,* this Court applied settled principles of statutory construction to determine the FHFA Extender Statute's clear meaning. The *UBS* Court held that by its plain terms the statute mandates exclusive minimum time limits to enable FHFA, as conservator, to collect monies and obligations due to Fannie Mae and Freddie Mac (the "GSEs"). *UBS*, 712 F.3d at 138-39. Those time limits supplant all other time periods, whether periods of limitations or repose. *Id.* at 142-44. Because the FHFA and FDIC Extender Statutes are materially identical, those conclusions apply equally here.

The district court was bound by this Court's holding in *UBS*, and its decision to depart from that ruling constitutes reversible error. *See, e.g.*, *United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009) (reversing district court that ignored Circuit precedent in an attempt to

"predict[ ] [ ] what the Supreme Court will hold when it chooses to address [an] issue in the future.") (quotation marks omitted); *United States v. Robbins*, 729 F.3d 131, 136 (2d Cir. 2013) (similar). The only circumstance in which a district court is authorized to reject a holding of this Court is where "its rationale is overruled, implicitly or expressly, by the Supreme Court or this court." *Consol. Edison Co. v. UGI Utils., Inc.,* 423 F.3d 90, 101 n.12 (2d Cir. 2005). As multiple courts have now recognized, the decision in *CTS* does not meet that standard. *See Nomura II*, 764 F.3d at 1214 ("The Court's decision in *CTS* does not alter our original conclusion that the term 'statute of limitations' should be construed broadly to include statutes of repose."); *FHFA v. HSBC N. Am. Holdings Inc.*, Nos. 1:11-cv-6189-DLC & 1:11-cv-6201-DLC, 2014 WL 4276420, at *2 (S.D.N.Y. Aug. 28, 2014) ("For each of the reasons set out in the Tenth Circuit's finely written opinion, *CTS* does not disturb" this Court's holding in *UBS*); *FDIC as Receiver for Community Bank of Nevada v. Rhodes*, 336 P.3d 961, 966-67 (Nev. 2014) (similar); *Guinn v. F.D.I.C.*, No. 2:09-CV-01809-PMP, 2015 WL 139386, at *3 (D. Nev. Jan. 12, 2015) (similar).

Central to those courts' decisions is that the Supreme Court in *CTS* did not purport to adopt a meaning of the term "statute of limitations" applicable throughout the United States Code—rather, the Court determined only that "the context" of CERCLA "shows an evident intent not to cover statutes of repose." *CTS*, 134 S. Ct. at 2187. This Court's decision in *UBS* applied that same analysis when it determined that the FHFA Extender Statute replaces all time periods, including periods of repose, *see UBS* 712 F.3d at 141 (like the Court in *CTS*, interpreting "how a reasonable reader would understand the statutory text, considered as a whole"). That analysis was sound, and the district court should have adhered to the Court's holding.

## A. The Extender Statute's Plain Language Demonstrates Congress' Intent to Afford the FDIC a Minimum of Three Years from Receivership to Assert Claims

In *UBS*, the FHFA brought Securities Act and state securities law claims within the three year period authorized by its Extender Statute, 12 U.S.C. § 4617(b)(12)(A). The defendants sought to dismiss those claims as untimely, maintaining that the Securities Act and State repose periods should apply instead of the three year period under Section 4617. This Court rejected that argument, holding that

17

Congress intended the Extender Statute's minimum time periods to govern all actions to the exclusion of any pre-existing time limits, including statutes of repose such as those found in Section 13 of the Securities Act, 15 U.S.C. § 77m.

In arriving at its holding, this Court applied the bedrock rule of statutory construction that courts look first and foremost to the plain language of a statute to determine Congressional intent, giving all undefined terms their ordinary meaning. *Id*. at 141. This Court also recognized the well-established principle that "courts are not to 'construe each phrase literally or in isolation.'" *Id.* (*citing Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole").

Section 1821(d)(14)'s text fully supports this Court's reading. That Section, entitled "Statute of limitations for actions brought by conservator or receiver," provides:

18

**(A)   In general**

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as . . . receiver shall be—

(i)  in the case of any contract claim, the longer of—
    (I) the 6-year period beginning on the date the claim accrues; or
    (II) the period applicable under State law; and
(ii)  in the case of any tort claim . . . , the longer of—
    (I) the 3-year period beginning on the date the claim accrues; or
    (II) the period applicable under State law.

**(B)   Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i)     the date of the appointment of the [FDIC] as conservator or receiver; or

(ii)    the date on which the cause of action accrues.

By its terms,  Section 1821(d)(14)(A) establishes two possible time limits for this FDIC action that sounds in tort—the three-year minimum period, or a "period applicable under state law" if that period is longer than three years.  Under Section 1821(d)(14)(B), the FDIC's time limits can begin to run on only two possible dates—the date of the

19

FDIC's appointment as receiver, or if later, the date the cause of action accrues.

As this Court in *UBS* explained:

> By explicitly stating that '*the*' statute of limitations for '*any action*' brought by FHFA as conservator 'shall be' as specified in § 4617(b)(12), Congress clearly provided that the extender statute shall apply to an action such as this one—an action brought by FHFA, as conservator, to recover 'obligations and money' due Fannie Mae and Freddie Mac. *Id.* §4617(b)(2)(B)(ii). By using these words, Congress precluded the possibility that some other limitations period might apply to claims brought by FHFA as conservator.

*Id.* at 141-42; *see also NCUA v. Nomura Home Equity Loan, Inc.,* 727 F.3d 1246, 1257 (10th Cir. 2013) *("Nomura I")* ("Application of the Extender Statute is mandatory. . . . [T]he plain meaning of the statute indicates that it applies to NCUA's Securities Act claim and that it supplants all other time limits, including Section 13's repose period.") (citing and quoting 12 U.S.C. § 1787(b)(14)(A) ('the applicable statute of limitations . . . *shall be* . . .') (emphasis in original)).

As the *UBS* Court reasoned, the use of the term "any" in FHFA's extender statute is a powerful indication that Congress intended the extender statute's time periods to apply broadly. *UBS*, 712 F.3d at 141; *see also Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219 (2008)

("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"); *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (citing *Webster's Third New International Dictionary* 97 (1976)). Likewise, by creating "*the* applicable statute of limitations," Congress demonstrated its intent for FHFA (and FDIC here) to have its own exclusive time period in which to bring suit, without regard to any time limitations that otherwise would have applied. And by mandating that the FDIC's statute of limitations "*shall be*" the *longer* of three years from the date FDIC becomes receiver or the period under state law, Congress further demonstrated its intent to set minimum time periods, without regard to other time periods that might otherwise apply.

Although satisfied that the plain language of the FHFA Extender Statute "precluded the possibility that some other limitations period might apply to claims brought by FHFA as conservator," *UBS,* at 142, this Court also considered and rejected the *UBS* defendants' contention that the term "statute of limitations," as it appears in the Extender Statute, does not encompass periods of repose. This Court considered the difference between statutes of limitations and repose, recognizing

21

that the term "statute of limitations" can be read narrowly to refer to only one category of time period—ordinary limitations periods that are subject to equitable tolling, discovery, and accrual rules—or it can be read broadly as a general shorthand description of all limitations periods, including periods of repose, which, like the Securities Act's three-year period, expire after the occurrence of an event unrelated to any injury suffered by a plaintiff.  712 F.3d at 140; *see also Nomura I,* 727 F.3d at 1258-59 (identifying multiple statutes in which Congress used "statute of limitations" to encompass periods of repose).  Citing examples of Congress' and the Courts' frequent use of the term "statute of limitations" and "statutes of repose" interchangeably, the Court concluded:

> If Congress had really wanted to exclude securities claims from the ambit of HERA's extender statute, it surely would have done so clearly and explicitly instead of by opaquely using the phrase "statute of limitations". . . .  It would not have elected to use language that "*the* applicable statute of limitations with regard to *any* action brought by [FHFA] . . . *shall be*" as set forth in the extender statute.

712 F.3d at 143, citing 12 U.S.C. § 4617(b)(12) (emphasis added).

The *UBS* Court's holding is not only consistent with the plain language of the Extender Statutes, it also effectuates the statutes'

22

purposes by ensuring that the relevant agencies have adequate time—at least three years from the receivership or conservatorship date—to investigate potential claims like the Securities Act violations alleged here. Section 1821(d)(14)'s legislative history shows that in enacting Section 1821(d)(14), Congress intended to remove a potentially significant barrier to the FDIC accomplishing these purposes. *See SMS Financial,* 167 F.3d at 242 n.21.

Numerous courts have agreed with this Court's analysis of the Extender Statute in *UBS*. *Nomura II*, 764 F.3d at 1207-1210; *Nomura I*, 727 F.3d at 1257; *Rhodes*, 336 P.3d at 966-967; *see also HSBC N. America Holdings, Inc.,* 2014 WL 4276420, at *2 (S.D.N.Y. Aug. 28, 2014) (concluding that "*CTS* does not undermine the Second Circuit's ruling[ ]" in *UBS*).[5]

---

[5] The Tenth Circuit issued its decision in *Nomura I* prior to the Supreme Court ruling in *CTS*. Upon issuing its decision in *CTS*, the Supreme Court, on June 16, 2014, vacated *Nomura I* and remanded for consideration in light of *CTS*. *Nomura Home Equity Loan, Inc. v. NCUA*, 134 S. Ct. 2818 (2014). On August 19, 2014, the Tenth Circuit issued its ruling in *Nomura II*, and held, based on the fundamental differences between the extender statute and the CERCLA provision at issue in *CTS*, that its initial ruling was correct. 764 F.3d at 1203. The *NCUA* defendants subsequently sought *certiorari* once more, and the Supreme Court unanimously denied this petition on January 12, 2015. *Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, No. 14-379, 2015 WL 132974, at *1 (U.S. Jan. 12, 2015).

The Tenth Circuit in *Nomura II* identified additional features of the Extender Statutes that further buttress this Court's prior decision in *UBS*. The Tenth Circuit observed that the references to accrual—a concept associated with statutes of limitations— in the Extender Statute do not expressly limit the time periods being replaced, but "appear in the portion of the Extender Statute that defines its own new limitations framework," explaining that "[t]he mere fact that the new time period in the Extender Statute could be subject to accrual does not prevent it from displacing a time limit that is not, i.e., a repose period." *Id.* at 1260.

As further evidence confirming a broad reading, the Court cited sponsor statements in Section 1821(d)(14)'s legislative history urging courts to construe the provision "to maximize potential recoveries . . . by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." *Id.* at 1263 (citing 135 Cong. Rec. S10205); *see also SMS Financial,* 167 F.3d at 242 n.21 (recognizing same purpose).

Most recently, the Nevada Supreme Court, sitting *en banc*,
reached the same conclusion. In *Rhodes*, the trial court had dismissed
an FDIC deficiency action filed beyond the "6 month period after the
date of the foreclosure" deadline set by Nevada statute. *Rhodes*, 336
P.3d at 963. The trial court characterized the Nevada six-month limit
as a period of repose, and held that Section 1821(d)(14) does not
preempt such statutes. The Nevada Supreme Court reversed. Finding
no basis in Section 1821(d)(14) for distinguishing between periods of
limitations and periods of repose, the Court adopted the natural
reading of the statutory language, holding that by its plain terms,
Section 1821(d)(14) expressly preempted "all other shorter state law
time limitations, including [Nevada's]." *Rhodes,* 336 P.3d at 966. *See
also Beckley Capital Ltd. P'Ship v. DiGeronimo,* 184 F.3d 52, 57 (1st
Cir. 1999) (rejecting argument that, because a one-year state time
period was not "really" a statute of limitations, it was not in conflict
with the FDIC Extender Statute, and holding that "enactment [of
Section 1821(d)(14)'s minimum periods] override[] any one-year
limitation period imposed under state law.").

## B.    *CTS* Provides No Basis for Departing From *UBS*

The district court refused to apply *UBS*'s well-supported holding that Congress intended the Extender Statute as a comprehensive provision replacing all other time bars.  To justify its departure from controlling law, the court likened Section 1821(d)(14) to CERCLA Section 309, 42 U.S.C. § 9658, and purported to follow the Supreme Court's holding in *CTS*.  JA 173-174.  But as multiple courts have determined since *CTS* was decided, the Supreme Court's holding that CERCLA Section 309 does not preempt state statutes of repose is fully consistent with this Court's holding in *UBS* and does not support any different result.[6]

---

[6]  *Nomura II*, 764 F.3d 1199 at 1207; *Rhodes*, 336 P.3d at 966; *HSBC N. Am. Holdings, Inc.,* 2014 WL 4276420, at *2 (incorporating *Nomura II* by reference and concluding that "[t]he Second Circuit has already decided this question, and the subsequent decision in *CTS* does not undermine the Second Circuit's ruling."); *Guinn*, 2015 WL 139386, at *3 (same).  All of these courts have recognized that the same statute-specific analysis that the Supreme Court performed in the CERCLA context supports a different result in the context of Extender Statutes authorizing suit by agency plaintiffs.  *But see FDIC v. Goldman, Sachs & Co.,* 2014 WL 4161567 (W.D. Tex. Aug. 18, 2014).

1.  **No Textual Support Exists for the District Court's Conclusion that FIRREA Section 1821(d)(14) and CERCLA Section 309 Are Similar**

The district court's ruling was premised on supposed similarities between the FDIC Extender Statute and CERCLA Section 309 that do not in fact exist. As the United States stressed in its *CTS* amicus brief, 42 U.S.C. "Section 9658 contrasts markedly with other statutes [such as the Extender Statutes § 1787(b)(14),] in which Congress chose to override *all* otherwise applicable time limitations." *Nomura II*, 764 F.3d at 1209. For this reason, the Tenth Circuit expressly rejected the district court's premise, equating FIRREA and CERCLA, as a "threshold analytical misstep," explaining that "the text and structure of the Extender Statute are fundamentally different from" the statute interpreted by *CTS*, 42 U.S.C. § 9658. *Id.* at 1208 n.6; *see also Rhodes*, 336 P.3d at 966 ("*CTS Corp.'s* analysis does not dissuade us from concluding that the FDIC Extender Statute preempts both statutes of limitations and repose. The FDIC Extender Statute is different than the federal statute that was evaluated in *CTS Corp.*").

The district court began its analysis by deeming it "instructive" that, like CERCLA Section 30, Section 1821(d)(14) uses the term

"statute of limitations" but "never uses the term 'statutes of repose.'"
JA 173. But the Supreme Court in *CTS* expressly found that the use of
the term "statute of limitations," without the term "repose," is "not
dispositive," since Congress has often used "statute of limitations" to
encompass periods of repose. 134 S. Ct. at 2185.[7] In fact, as the Court
observed, Congress has ***never*** used the term "statute of repose" in ***any***
enacted legislation. Thus, as in *CTS*, the absence of the term "repose"
cannot resolve the issue before this Court, and—as this Court already
recognized in *UBS*—it is necessary instead to analyze the unique
features of the Extender Statute in order to determine Congress' intent.

The district court also erroneously relied for its narrow
interpretation on the Supreme Court's discussion in *CTS* of the concept
of accrual, which is associated with statutes of limitations, not periods
of repose. For reasons the Tenth Circuit explained in *Nomura II*,
however, *CTS*'s discussion of accrual "does not alter [that court's]

---

[7] One example of this usage is in the Securities Act itself—as
amended by the 1934 Exchange Act—which includes its three year
repose period within a provision that never uses the term "repose," but
is captioned "Limitations on Actions." 15 U.S.C. § 77m. In effect, then,
the district court held that the term "statute of limitations" in FIRREA
does not encompass the repose period in the Securities Act, despite the
fact that the Securities Act itself uses the term "limitations" in precisely
that broad manner.

original [*Nomura I*] decision." *Nomura II*, 764 F.3d at 1203. The CERCLA provision in *CTS* adjusted the accrual date for still applicable State statutes of limitations. 12 U.S.C. 1787(b)(14)(A). Since accrual is a concept associated with statutes of limitations, the Court reasoned that such an adjustment would not apply to periods of repose. 134 S. Ct. at 2187. The FDIC Extender Statute is different; it refers to "accrual" to describe the start of the newly created limitations period the statute establishes for the FDIC, not to refer back to any pre-existing state time bar. *See Nomura II*, 764 F.3d at 1208 n.7 ("whether the time framework for NCUA actions includes an accrual feature does not change that it replaced other time limits, whether they are called statutes of limitations or repose.").

The district court here also reasoned that "like CERCLA, the FDIC Extender Statute describes the covered period in the singular by . . . looking to 'the period applicable under State law." JA 174. The court again misreads the statutes' distinct textual contexts. In CERCLA Section 309, the term "applicable *limitations* period" refers back to "the state law time frame modified by the federal commencement date (that is, the specific object of federal preemption)."

*Nomura II*, 764 F.3d at 1212. By contrast, the phrase "the applicable statute of limitations" in the Extender Statute does not refer to a state period that the statute is adjusting, but refers instead to the newly created time period governing claims by the FDIC in its role as receiver or conservator. Thus, as the Tenth Circuit explained, the parallel NCUA Extender Statute uses the singular "period applicable under state law," to "help construct a new exclusive framework for NCUA." *Nomura II*, 764 F.3d at 1212.

In sum, this Court's analysis in *UBS*, which emphasized the plain language in the Extender Statute establishing "*the applicable* statute of limitations" for "*any* action" by the covered agency, remains good law. *UBS*, 712 F.3d at 143 (emphasis in original). The Extender Statute and CERCLA are different statutes, and, as the Tenth Circuit has concluded, the Supreme Court's analysis in *CTS* in no way undermines the holding by this Court.

## 2. The District Court Failed to Properly Take Account of the Structural Differences Between the Statutes

The district court's cursory analysis also fails to acknowledge and take proper account of other stark structural differences between

CERCLA and the FDIC Extender Statute. Significantly, in *CTS* the Supreme Court relied on language in CERCLA providing that application of the federal commencement date was an "*except[ion]*" to otherwise applicable State law. 42 U.S.C. § 9658(a)(1). The Court found that "[u]nder this structure, state law is not pre-empted unless it fits into the precise terms of the exception." *CTS*, 134 S. Ct. at 2185. But there is no such limiting language in 1821(d)(14). To the contrary, the FDIC Extender Statute creates a new "general" timeliness framework, 12 U.S.C. § 1821(d)(14)(A), and as discussed above, states broadly that this new framework is "the applicable" timeframe for "any" suit by the FDIC.

Thus, unlike CERCLA Section 309, the FDIC's Extender Statute does not create a "narrow exception" to "particular preexisting state statutes of limitations." *See Nomura II*, 764 F.3d at 1208-09 (citing Br. for the United States as Amicus Curiae at 22-23, *CTS Corp. v. Waldburger*, No. 13-339 (U.S. filed Mar. 3, 2014)). Rather, like the NCUA's Extender Statute, it "establish[es] all-purpose time limits for any actions [the agency as receiver or conservator] may wish to pursue." *Id*. at 1208. Contrary to the district court, nothing in the statute

31

suggests that it should be read narrowly to replace only *some* state law periods.

Moreover, references to "any" in CERCLA Section 309 and the FDIC Extender Statute are not comparable.  Section 309 contains additional limiting language absent from the FDIC Extender Statute.  Thus, Section 309's federal commencement date applies to "any" state law action, but only if the action is for personal injury or property damages caused by the release of hazardous materials bought by a private party, and only "if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date."  *CTS*, 134 S. Ct. at 2184 (quoting 42 U.S.C. § 9658(a)(1)).

Section 1821(d)(14) does not use "any" to refer solely to a specified set of state law claims.  Rather, on its face, Section 1821(d)(14)'s time periods apply across the board to "any action brought by the Corporation as conservator or receiver."  12 U.S.C. § 1821(d)(14)(A).  Thus, unlike CERCLA's federal commencement date, the FDIC

32

Extender Statute's time limits apply to all, not just some, actions of whatever kind brought by the FDIC as receiver or conservator.

In sum, the district court's analysis ignores several crucial structural differences between the statutes. The CERCLA provision makes *state law* "generally applicable," 42 U.S.C. § 9658(a)(2), leaving state law time periods unchanged, and altering only the commencement date for some state statutes of limitations in certain limited circumstances. In the FDIC Extender Statute, by contrast, Congress established a comprehensive timeliness provision that created entirely new minimum time periods. In Section 309 the federal commencement date applies as an "exception" to state law. In Section 1821(d)(14) it's the other way around. Section 1821(d)(14)'s time periods, running from the receivership date, apply "in general." The FDIC Extender Statute borrows state law periods for FDIC actions only if they provide periods longer than three or six years from the date of the FDIC's appointment as receiver or conservator for the FDIC to file lawsuits. By failing to recognize these crucial differences, the district court took the same "threshold analytical misstep" the Tenth Circuit identified in Nomura II. *Nomura II*, 764 F.3d at 1208 n.6. Contrary to the district court's

33

conclusion, Section 1821(d)(14) and CERCLA Section 309 are not the same, and nothing in *CTS* undermines this Court's reasoning or holding in *UBS*.

### C.   The District Court Misread the Extender Statute's Legislative History and Purposes

FIRREA's legislative history provides further support for this Court's holding in *UBS*, particularly when contrasted with the legislative history that the Supreme Court found critical to its holding in the CERCLA context.  Specifically, the Court emphasized that Congress had commissioned as part of CERCLA's enactment a 1982 Study Group Report that specifically distinguished limitations periods from periods of repose and urged Congress to preempt both.  *CTS*, 134 S. Ct. at 2186.   On this basis, the Court reasoned that Congress, by using one term in CERCLA and not the other, made a purposeful decision not to displace periods of repose.   *Id.*

As the Tenth Circuit recognized in *Nomura II*, there is nothing in FIRREA's history "remotely similar to the Study Group Report" relating to CERCLA, and there is no basis, therefore, to conclude that Congress departed from its usual practice of using the term "statute of limitations" broadly to encompass periods of repose.  764 F.3d at 1215.

Moreover, as the Tenth Circuit further explained, "Congress's awareness of the distinction when it amended CERCLA in 1986" does not mean "that it had this distinction in mind when it enacted FIRREA in 1989." 764 F.3d at 1215-16. Indeed, Congress has repeatedly used the term "statute of limitations" in legislation enacted after CERCLA and FIRREA "to encompass repose periods." 764 F.3d at 1216 & n.18 (citing examples).

While FIRREA's legislative history contains no evidence that Congress intended to distinguish between traditional statutes of limitations and periods of repose, it does clearly indicate that Congress implemented Section 1821(d)(14) as a key component of its purpose to provide the FDIC with sufficient time to carry out its duty to maximize recoveries, minimize losses caused by bank failures, and hold accountable those responsible for such losses. *See, e.g.*, 12 U.S.C. §§ 1821(d)(2)(B), (F), (G), (I).[8] Thus, as courts have consistently

---

[8] FIRREA's sponsor, Senator Donald Riegle, stated that its statute of limitations provisions "should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Sen. Riegle), *quoted in UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir. 1999) (concluding that Senator Riegle's statement

recognized, FIRREA's legislative history shows that Congress enacted Section 1821(d)(14)—which it described as "of utmost importance"—to "broaden the FDIC's powers," stressing that the provision "should be construed to maximize potential recoveries" "by preserving to the greatest extent permissible by law claims that would otherwise have been lost." *SMS Financial,* 167 F.3d at 242 n.21 (*quoting* 135 Cong. Rec. S10205 (Daily Ed. Aug. 4, 1989)); *Nomura II*, 764 F.3d at 1215 (relying on the same statement); *N.H. Ins. Co.*, 953 F.2d at 486-87 & n.2 (same); *see also FDIC v. J.P. Morgan Acceptance Corp. I*, 958 F. Supp. 2d 1002, 1007-08 (S.D. Ind. 2013) ("Defendants' interpretation of FIRREA's extender provision as including only statutes of limitation and not statutes of repose would undermine the express Congressional intent that the extender provision be construed to permit the FDIC sufficient time to file suit once it is appointed receiver of a failed bank[.]"); and *FDIC v. Wright,* 942 F.2d 1089, 1096 (7th Cir. 1991) (". . .section 212, which expanded the conservatorship and receivership powers of the FDIC, was 'designed to give the FDIC power to take all

---

should be "accord[ed] substantial weight" in determining the extender provision's "purpose and scope," *id.*) (citing *Federal Energy Admin. v. Algonquin SNG, Inc.,* 426 U.S. 548, 564 (1976)).

actions necessary to resolve the problems posed by a financial institution in default") (*quoting* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 330, *reprinted in,* 1989 U.S. Code Cong. & Admin. News 86)).

The FDIC Extender Statute serves important purposes that go to the heart of FIRREA's remedial framework, giving the FDIC its own, different, time periods that begin to run on the receivership date. The statute gives the FDIC time to do its work, and it "relieve[s] [the FDIC] from the burden of complying with multiple federal and state statutes of limitations." *Nomura II*, 764 F.3d at 1217.

As the *UBS* Court concluded, "the more natural reading of the [identical statutory language]," pursuant to which the Extender Statute displaces all prior time bars, is "the one that is both in line with everyday usage and consistent with the objectives of the statute overall." *UBS*, 712 F.3d at 143 (*quoting Federal Housing Finance Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 316-17 (S.D.N.Y. 2012); *Nomura II*, 764 F.3d at 1217 ("It strains common sense to think Congress would have saddled the NCUA with having to comply with multiple federal and state statutes of repose").

The reading adopted by this Court in *UBS* gives full effect to Section 1821(d)(14)'s stated purpose—to provide the FDIC with adequate time to perform its mission to recover bank losses, and hold accountable those responsible for those losses—by providing the FDIC with its own special statute of limitations for "any" action. The district court's ruling betrays that purpose, and defies this Court's clear holding in *UBS*, by allowing statutes of repose to *extinguish* FDIC claims that are otherwise *timely* under Section 1821(d)(14).

## CONCLUSION

This Court has already ruled that the language, structure and purpose of a materially identical provision demonstrate that Congress enacted the Extender Statute to provide the FHFA (and by extension the FDIC) with a minimum of three years from the date of commencement of a receivership or conservatorship to bring suit on any claims alive on that date. *CTS* provides no basis for altering that well-reasoned ruling. The Court should reverse the district court's judgment dismissing the FDIC's claims as untimely and remand the case for further proceedings.

Respectfully submitted,

COLLEEN J. BOLES
Assistant General Counsel
KATHRYN R. NORCROSS
Senior Counsel

/s/ Jaclyn C. Taner
JACLYN C. TANER
JAMES SCOTT WATSON
Counsel
Federal Deposit Insurance
  Corporation
3501 Fairfax Drive, VS-D7006
Arlington, VA 22226-3500
(703) 562-2373

## RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **7,731** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Undersigned counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point Century typeface using Microsoft Word 2003.

/s/ Jaclyn C. Taner
Jaclyn C. Taner
*Attorney for Appellant Federal Deposit Insurance Corporation as Receiver for Colonial Bank*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant FDIC has been filed by electronic case filing and served on counsel of record through the Court's Notice of Docket activity on this 26th day of January, 2015.


/s/ Jaclyn C. Taner
Jaclyn C. Taner